UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John Nocilla, Jr., | ) |
|    Plaintiff, | ) Case No.: 1:21-cv-00134 |
| vs. | ) Judge Michael R. Barrett |
| Joe Bridges, et al., | ) |
|    Defendants. | ) |

**OPINION & ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Joe Bridges and R&B Trucking Inc ("R&B") (collectively, "Defendants"). (Docs. 15, 20).[1] Plaintiff John Nocilla, Jr. filed a Response in Opposition (Doc. 23), and Defendants filed a Reply (Doc. 24).

**I.    BACKGROUND**

Plaintiff was an over-the-road truck driver from 1973 through April 25, 2019. (Doc. 18 John Nocilla, Jr. Dep. PageID 222-23, 233). He lives in Minnesota. (*Id.* PageID 222). Bridges is an over-the-road truck driver and has been since he obtained his commercial driver's license ("CDL") in 1996. (Doc. 19 Joe Bridges Dep. PageID 256-57). He lives in Illinois. (*Id.* PageID 250). Bridges worked with R&B for two years, including on April 23, 2019. (*Id.* PageID 263, 274). R&B is a trucking company that is both registered

---

[1] Defendants initially filed their Motion for Summary Judgment as Document 15 on this matter's docket. (Doc. 15). As that filing did not comply with the Local Rules for the Southern District of Ohio, namely S.D. Ohio Local Rule 5.1 related to text searchable PDF files, the Clerk of Courts instructed Defendants to refile the motion in a compliant format. (Doc. 16). Defendants filed their motion in the correct format the next day. (Doc. 20). The Court cites the compliant motion for ease of organization.

and has its primary place of business in Mississippi. (Doc. 4 ¶ 8).

On April 23, 2019, Plaintiff was tasked with delivering a shipment of paper to an Office Depot warehouse in West Chester, Ohio. (Doc. 18 Nocilla Dep. PageID 224-25). Upon Plaintiff's timely arrival for his appointment at the Office Depot warehouse, at approximately 3:30 am, Plaintiff rang the intercom system at the warehouse's front gate. (*Id.* PageID 226). The answering representative instructed Plaintiff to back Plaintiff's truck into a loading dock and then walk in front of the trucks at that same loading dock to enter the main office to complete paperwork before unloading his shipment of paper. (*Id.*)

Following those instructions, Plaintiff backed his truck into the requested location and began walking across the front of the parked trucks so that he could enter the office to complete the requisite paperwork before unloading. (*Id.*) As Plaintiff was walking, he walked in front of Bridges' truck, Bridges' truck suddenly and unexpectedly moved forward, and the truck's left front hood struck Plaintiff's left side from his shoulder to his hip. (*Id.* PageID 227-28). Plaintiff was not knocked down, but he had to hold onto Bridges' truck's left headlight until the truck stopped moving to stay upright. (*Id.* PageID 228). When Bridges stopped the truck, after a little less than one minute, Plaintiff let go of the headlight and stepped away from the truck. (*Id.* PageID 228). Plaintiff did not see Bridges in Bridges' truck until after the truck hit Plaintiff. (*Id.* PageID 227). At the time of the hit, Bridges' truck's headlights were off, and Bridges' seat was set to the lowest position. (*Id.* PageID 227). After Plaintiff stepped away from the truck, he was very upset, yelled at Bridges, and used a racial slur directed toward Bridges. (*Id.* PageID 229); (Doc. 19 Bridges Dep. PageID 294). Bridges did not respond to Plaintiff. (Doc. 18 Nocilla Dep. PageID 229); (Doc. 19 Bridges Dep. PageID 294-95).

After this incident, Plaintiff instantly felt pain in his upper neck, left shoulder, and left arm, which was bleeding and had an approximately one inch laceration. (Doc. 18 Nocilla Dep. PageID 229). Plaintiff immediately reported Bridges to the Office Depot representatives in the office and called the police. (*Id.* PageID 225). The police, along with a fire truck and ambulance, responded and created a traffic report. (*Id.*) The ambulance subsequently transported Plaintiff to a local hospital. (*Id.* PageID 232). When Plaintiff arrived at the hospital, he was emotionally shaken up and felt physical pain in his neck and shoulder, although his left arm had stopped bleeding. (*Id.*) The hospital discharged Plaintiff around 6:00 am on April 23, 2019. (*Id.* PageID 233). He then returned to the warehouse, finished the job, and, on April 24, 2019, returned to Minnesota. (*Id.*) On April 25, 2019, Plaintiff was terminated due to his use of a racial slur while yelling at Bridges immediately after the April 23, 2019 incident. (*Id.* PageID 233-34). Plaintiff has not been employed since that date. (*Id.* PageID 234).

Following the April 23, 2019 incident, and visit to the local hospital in Ohio, Plaintiff sought medical treatment from various health care providers and facilities in Minnesota for his neck and left shoulder for nearly one year. (*Id.* PageID 238). Additionally, around October 2020, Plaintiff lost control of his bicycle, flipped over, and broke one of his legs. (*Id.* PageID 235-36) (Plaintiff testifying that this bicycle accident happened "a year ago" at his October 2021 deposition). Plaintiff continues to suffer from neck and left shoulder pain. (*Id.* PageID 236).

On December 19, 2021, Dr. John Wolf wrote an expert medical opinion on Plaintiff's behalf. (Doc. 20-1 PageID 390-96). It is the only expert medical opinion before the Court. Dr. Wolf reviewed all of the medical chart information and "extensive records"

3

that Plaintiff's counsel submitted to him. (*Id.* PageID 390, 392). Dr. Wolf ultimately opined that it was "somewhat difficult to come to any firm conclusions," but that:

- with respect to both Plaintiff's neck pain and shoulder pain, "[the diagnostic procedures . . . show only chronic degenerative changes" and "[t]here is no evidence in any of these tests of any acute injury;"
- with respect to the cause of Plaintiff's neck pain, the cause of Plaintiff's pain is not clear; and
- with respect to the cause of Plaintiff's left shoulder injury, "it is medically improbable that the rotator cuff tear was caused in any way by [the April 23, 2019] work-related injury."

(*Id.* PageID 394).

Plaintiff's Complaint brings one claim of negligence against Bridges and one claim of negligent entrustment against R&B. (Doc. 1).

## II. <u>ANLAYSIS</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its

complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

### a. Negligence

To establish negligence in Ohio,[2] "a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St. 3d 120, 909 N.E.2d 120, 122 (2009). Bridges argues that, even assuming that Plaintiff can establish a duty of care and a breach of that duty, Plaintiff cannot establish causation. (Doc. 20 PageID 339-41).

"The 'proximate cause' element ordinarily is established 'where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act.'" *Smith v. Hess*, 2018-Ohio-3602, ¶ 13, 108 N.E.3d 1266, 1271 (alteration in original) (internal quotation marks omitted) (quoting *Heard v. Dayton View Commons Homes*, 2018-Ohio-606, ¶ 12, 106 N.E.3d 327, 331). The issue of proximate cause is not open to speculation; as a matter of law, conjecture as to whether the breach of duty caused the particular damage is not sufficient." *Heard*, 106 N.E.3d at 331. On this, Ohio case law "divides causation questions into two categories: those that are within common knowledge and those that involve a scientific

---

[2] The Court must apply the substantive law of the form state as jurisdiction is based on diversity of citizenship. *See Erie v. Tompkins*, 304 U.S. 64, 58 (1938); *cf.* (Doc. 1 ¶¶ 2, 6-8); (Doc. 4 ¶¶ 6-8). Moreover, the parties agree that Ohio law applies to Plaintiff's negligence claims. *See, e.g.*, (Doc. 20 PageID 338-39); (Doc. 23 PageID 408-09).

5

inquiry not within the common knowledge of persons." *Dixon v. Miami Univ.*, 2005-Ohio-6499, ¶ 37. And, "[e]xcept as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion." *Heard*, 106 N.E.3d at 331 (internal quotation marks omitted). "Soft-tissue injuries like neck and back strains and sprains require expert testimony to establish a causal connection, because they are injuries that are internal and elusive, and are not sufficiently observable, understandable, and comprehensible to be matters of common knowledge." *Id.*; *see Dixon,* 2005-Ohio-6499, ¶ 39.

Expert testimony regarding the causation element is required in this case as Plaintiff's neck and left shoulder injuries are "internal and elusive," and "are not sufficiently observable, understandable, and comprehensible to be matters of common knowledge." *See Heard*, 106 N.E.3d at 331; *Dixon,* 2005-Ohio-6499, ¶ 39. Plaintiff argues that he has provided sufficient evidence that Bridges' negligence directly and proximately caused Plaintiff's neck and left shoulder injuries. (Doc. 23 PageID 409-10). Plaintiff cites Dr. Wolf's statements that Plaintiff "was mildly injured when he was struck by a very slow-moving semi tractor trailer in a parking lot;" Plaintiff's "medical evaluations have been performed by apparently very qualified medical physicians, and they have decided that he does not have an injury which would be amenable to or require surgical intervention;" Plaintiff "has been referred to an appropriate specialist for pain management;" and Plaintiff "has had appropriate treatment and diagnostic testing." (*Id.* PageID 409) (citing (Doc. 20-1 PageID 394-95)).

6

Plaintiff's argument, however, ignores those portions of Dr. Wolf's opinion in which Dr. Wolf opines that, with respect to both Plaintiff's neck pain and left shoulder pain, "[the diagnostic procedures . . . show only chronic degenerative changes" and "[t]here is no evidence in any of these tests of any acute injury;" with respect to the cause of Plaintiff's neck pain, the cause of Plaintiff's pain is not clear; and with respect to the cause of Plaintiff's left shoulder injury, "it is medically improbable that the rotator cuff tear was caused in any way by [the April 23, 2019] work-related injury." (Doc. 20-1 PageID 394). Reading Dr. Wolf's opinion, as a whole, the Court is not persuaded that Plaintiff has produced sufficient expert opinion evidence of a link between the April 23, 2019 incident and Plaintiff's neck and left shoulder injuries. *See Lang*, 909 N.E.2d at 122. Accordingly, even when viewing the evidence in Plaintiff's favor, there is no genuine dispute of material fact as to causation and summary judgment in Bridges' favor is proper.

### b. Negligent Entrustment

In an action against the owner of a motor vehicle for injury arising from its entrustment for operation, the burden is upon the plaintiff to establish: (1) that the motor vehicle was driven with the permission and the authority of the owner; (2) that the entrustee was in fact an incompetent driver; and (3) that the owner knew at the time of the entrustment that the trustee had no driver's license, or that he was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency. *Cox v. Dubois*, 16 F. Supp. 2d 861, 865 (S.D. Ohio 1998) (citing *Gulla v. Straus*, 154 Ohio St. 193, 193, 93 N.E.2d 662, 663 (1950)); *see Ramsey v. Wilson*, No. 1:06-CV-82, 2008 WL 5146273, at *2 (S.D. Ohio Dec. 5, 2008); *see also Marinkovic v. Hazelwood*, No. 1:19CV1710, 2021

7

WL 1165726, at *4 (N.D. Ohio Mar. 26, 2021). R&B appears to concede that Bridges drove the truck with R&B's permission[3] and argues that Plaintiff cannot establish a genuine issue of material fact as to whether Bridges was an incompetent or unqualified driver or that R&B knew as much. (Doc. 20 PageID 341-42).

As to the incompetence or unqualified element, "Ohio courts have held that '[i]solated incidents of failing to obey traffic laws generally will not establish incompetence' for purposes of negligent entrustment claims." *Marinkovic*, 2021 WL 1165726, at *4 (cleaned up) (quoting *Hoff v. Minder*, 2014-Ohio-3491, ¶ 13). Instead, "[t]o prove a driver's incompetence, a plaintiff must show that the driver was 'wholly incompetent by reason of mental or physical disability to operate a vehicle, such as being of tender age, mentally deficient, physically deformed or intoxicated, or . . . any cause . . . known to the owner.'" *Hoff*, 2014-Ohio-3491, ¶ 13 (quoting *Gulla*, 154 Ohio St. at 193). Generally, the driver's incompetence must be "pervasive" to establish a triable issue. *Id.* (quoting *Bowlander v. Ballard*, 2003-Ohio-2907, ¶ 28).

Plaintiff's sole negligent entrustment argument is that, prior to hitting Plaintiff, Bridges had his CDL license suspended and reinstated once, and R&B should have thus not hired Bridges. (Doc. 23 PageID 411). Bridges testified that, years ago, his CDL licensed was suspended due to speeding and his failure to pay the resulting speeding citation, and that, after he paid the citation and reinstatement fees, his license was reinstated. (Doc. 19 Bridges Dep. PageID 259-61). A prior suspended CDL license, due to a single incident of failing to pay a speeding ticket, is not pervasive enough to establish incompetency or create a triable issue of fact. *See Hoff*, 2014-Ohio-3491, ¶ 13;

---

[3] The Court notes that Bridges testified that, when he worked for R&B, he owned his truck. (Doc. 19 Bridges Dep. PageID 263-67).

8

*Bowlander*, 2003-Ohio-2907, ¶ 28; *see also Dowe v. Dawkins*, No. 93AP-860, 1993 WL 531293, at *2 (Ohio Ct. App. Dec. 23, 1993) (holding that, even if defendant knew her daughter did not have a valid driver's license at the time of the incident, the mere fact that one does not have a valid driver's license, by itself, is not evidence of negligent entrustment, as an otherwise competent driver may not have a valid driver's license (citing *Williams v. Bolding*, 6 Ohio App. 3d 48, 50, 452 N.E.2d 1346, 1348 (1982))). At the time of the incident, Bridges had 23 years of over-the-road truck driving experience, he had never been in an accident where he was at fault, and his CDL license was current and valid. (Doc. 19 Bridges Dep. PageID 257, 273). Plaintiff fails to establish a triable question of fact with respect to his negligent entrustment claim absent some evidence of Bridges' pervasive incompetence due to mental or physical disability to operate a vehicle, tender age, mental deficiency, physical deformity, or intoxication and R&B's knowledge of such incompetence. *See Gulla*, 154 Ohio St. at 193; *Hoff*, 2014-Ohio-3491, ¶ 13. Summary judgment in favor of R&B is proper.

III. **CONCLUSION**

In light of the foregoing, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Docs. 15, 20) is **GRANTED**, this matter is **CLOSED**, and the Clerk will issue a separate **JUDGMENT**.

**IT IS SO ORDERED.**  /s Michael R. Barrett
Michael R. Barrett, Judge
United States District Court